UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LUIS GONZALES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:19-cv-02498-TWP-MPB |
| | ) |
| DUSHAN ZATECKY, | ) |
| | ) |
| Respondent. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Luis Gonzales' petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISR 18-11-0077. For the reasons explained in this Order, Gonzales' petition is **granted**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

ISR 18-11-0077 began with the following conduct report, written by Officer J. Conde on November 7, 2018:

> At approx. 1:25 am on the date written above, I was conducting a search on offender Luis Gonzales DOC # 218651. During the search a Black ZTE cell phone was found inside the false bottom of a shoe box. Along with his other belongings a black charger was found as well.

Dkt. 10-1.

On November 16, 2018, Gonzales received a screening report notifying him that he was charged with possessing a cellular device in violation of Code A-121. Dkt. 10-2 at 1. Gonzales made three requests to call witnesses: "officer who wrote conduct," "officer who shook me down," and "offenders."[1] *Id.*

All three requests were denied. *Id.* Gonzales' request to call the officer who wrote the conduct report was denied on grounds that the conduct report "is his statement." *Id.* Similarly, Gonzales' request to call the officer who searched his bunk area was denied on grounds that it was the same officer who wrote the conduct report (and so, again, the conduct report itself would suffice). *Id.* Finally, Gonzales' request to call other inmates was denied on grounds that none were present at the time of the incident. *Id.*

Gonzales also requested to review surveillance video showing his bunk area during the search. *See* dkt. 10-2 at 3. The hearing officer denied Gonzales' request on grounds that permitting Gonzales to view the video would jeopardize prison safety and security. *See* dkt. 10-3 at 5. However, the hearing officer provided the following written summary of the video:

> Upon review of video for incident ISR 18-11-0077, I Officer C. Cooke did see Officer Conde in the bed area of K5-4-4 at approximately 1:15 am going through

---

[1] Although Mr. Gonzales signed the screening report to acknowledge that he received it, these requests appear to have been written by the same prison official who denied Mr. Gonzales' witness requests. Thus, the Court infers that these requests are documented in the officer's words—not necessarily Mr. Gonzales'.

> the short blue locker furthest from the mid wall and bed area assigned to Gonzales 218651.
>
> The view of the entire bed area is obstructed by a blanket and jacket hanging on the bunk.
>
> At approximately 1:19:33 Officer Conde hands his supervisor, while still in the bed area of offender Gonzales, a red Fila shoe box showing him what is inside of it.

*Id.*

The Court has reviewed the surveillance video and finds no material discrepancies between the video itself and the statements in Officer Cooke's description. However, at least one omission is significant: Officer Conde and his supervisor were not the only officers involved in the search. By the Court's count, at least six officers are present in the small area where the search takes place.

ISR 18-11-0077 proceeded to a hearing on November 26, 2018. Dkt. 10-3 at 1. Gonzales presented a written statement, which was notarized on November 21, 2018. *Id.* at 2–4. In his statement, Gonzales requested to call as witnesses "the officer who conducted the shakedown, and any other officers who were also involved or was a witness to the shakedown," plus "the officer who allegedly found the cellular device and the officer who wrote the report of conduct." *Id.* at 2–3. Gonzales contended that the property locker described in the video review was not his. *Id.* at 2.

Evidence considered at the hearing also included an e-mail in which Officer Conde stated he "determined the shoe box the cellphone was found in belonged to" Gonzales because he found it "amongst the other objects that contained [his] name and personal information such as his pictures." *Id.* at 6. The hearing officer also considered photographs showing a cell phone, a charger, and a shoe box (in various combinations) with an identification card. *Id.* at 7–9. The Court cannot determine from the photograph provided who is depicted in the identification card. Additionally, no evidence explains when or how these items were photographed, and none of the

reports or e-mails refers to an identification card being found in the box with the cell phone and charger.

The hearing officer found Gonzales guilty and provided the following explanation:

> Conduct is clear. Video confirms where articles found, but the entire bed area was obstructed from view. Officer verified articles found in offenders property because amongst other property belonging to offender; picture + other property w/ name on it.

*Id.* at 1. The hearing officer assessed sanctions, including a suspended deprivation of earned credit time and a demotion in credit-earning class. *Id.* Gonzales' administrative appeals were denied. Dkt. 10-4; dkt. 10-5.

### III. Analysis

Gonzales asserts numerous grounds for relief in his petition. The Court need not address them all because the record shows that Gonzales was denied the due process right to present exculpatory witness testimony, and his petition must be granted on that basis.

**A.     Right to Present Witness Testimony**

Due process entitles prisoners to a limited opportunity to present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563–67. That includes "a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff*, 418 U.S. at 566).

The right to call witnesses extends only to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further

limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

When an inmate requests to call a witness at a disciplinary hearing, he is presumptively entitled to present the witness's live testimony as opposed to a written statement. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998) ("We are . . . unconvinced by the prison's assertion that its policy of interviewing requested witnesses and summarizing their testimony in an unsworn report is a legitimate means of 'calling a witness' even when live testimony would be feasible."); *Doan v. Buss*, 82 F. App'x 168, 170–71 (7th Cir. 2003) (rejecting the contention that "under *Wolff* oral testimony is not required as long as written statements are obtained"); *Ashby v. Davis*, 82 F. App'x 467, 471 (7th Cir. 2003) (holding that "[t]he submission of a written [witness] statement is not by itself a valid reason for not appearing," and explaining that "[l]ive testimony is the presumption absent a valid reason for proceeding differently").

**B.    Denial of Request to Call Officer Conde**

Gonzales requested to call the "officer who wrote" the conduct report, Officer Conde. Dkt. 10-2 at 1. The record makes clear that his testimony would have been material and relevant and that it would not have been cumulative or repetitive. Officer Conde's conduct report and his supplemental e-mail to the hearing officer leave significant questions unanswered, as Gonzales argues in his petition and reply.

The box containing the cell phone and charger were found in a bunk area inhabited by and accessible to several inmates. No evidence states clearly where in that area Officer Conde found the red shoebox. Was it in a locker? If so, which one? If not, where was it in relation to Gonzales' bed, locker, or other property?

5

Similarly, no evidence makes clear how Officer Conde determined that the box and its contents belonged to Gonzales. In his follow-up e-mail, Officer Conde stated that he found the box "amongst the other objects that contained [Gonzales'] name and personal information such as his pictures." Dkt. 10-3 at 6. But nothing in the record states what those objects were or what information they contained. The hearing officer considered pictures showing the phone and charger next to an identification badge, but no evidence confirms that the identification badge even depicts Gonzales. Moreover, neither the conduct report nor the follow-up e-mail contains any reference to an identification card. It is not clear where or when the identification card was discovered. Was it found at the same time as the red shoebox or later? Was it found inside the shoebox? If not, where—and how did Officer Conde connect the identification card to the red shoebox?

The absence in the record of answers to these questions undermines Gonzales' guilt. If they were answered in Gonzales' favor, the hearing officer would have had good reason to decide the case differently. Testimony from Officer Conde on these questions would have been material and exculpatory, and—given the lack of detail in his written statements—his testimony could not have been cumulative or repetitive.

Gonzales was entitled to call Officer Conde as a witness, and the respondent has not established that his written statements were an adequate substitute. *See Wilson v. Davis*, 102 F. App'x 37, 38 (7th Cir. 2004) ("The burden is on the state to offer a rational explanation for the denial of an inmate's request for witnesses.") (citing *Ponte v. Real*, 471 U.S. 491, 499 (1985)).

The respondent asserts that Gonzales "did not have a right to confrontation or cross-examination at the disciplinary hearing." Dkt. 10 at 13 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976)). This categorical statement—it is not clarified by any of the factual circumstances of

this case—amounts to an assertion that due process *never* entitles a prisoner charged with a conduct violation to seek or present additional evidence from the officer who observed and reported the alleged violation. This categorical statement does not fairly represent *Baxter*, and it is squarely contradicted by four decades of Seventh Circuit precedent.

In *Baxter*, the Supreme Court reversed a Ninth Circuit ruling that "an inmate . . . who is denied the privilege of confronting and cross-examining witnesses must receive written reasons" for the denial, or it "will be deemed prima facie evidence of abuse of discretion." 425 U.S. at 312 (internal quotation and citation omitted). The Court reaffirmed *Wolff*'s holding that due process did not grant prisoners the right to confront or cross-examine witnesses "'as a matter of course'" and found that the Ninth Circuit's rule stripped prison officials of the discretion *Wolff* intentionally left them. *Id.* at 321–323 (quoting *Wolff*, 418 U.S. at 567).

The Seventh Circuit immediately reminded prison officials that this discretion was "broad" but not "unbounded." *Hayes v. Walker*, 555 F.2d 625, 629 (7th Cir. 1977). "Due process" forbids "automatic exclusion of the right to call witnesses." *Id.* As such, a hearing officer must "examine[] each proposed witness for the relative benefit or danger in his testimony." *Id.* at 630. And that examination must be documented in a manner sufficient to permit "limited review" of the hearing officer's exercise of discretion. *Id.*

For these reasons, "a rule excluding a class or category of witnesses"—such as a rule excluding requests to call authors of conduct reports—"is presumptively disfavored." *Whitlock*, 153 F.3d at 387. Due process instead requires "case-sensitive administration of witness requests." *Id.* at 387–388. "The Constitution requires that a determination be made on a case-by-case basis that requested witnesses pose institutional problems." *Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992).

The hearing officer did not determine that Gonzales' request to call Officer Conde posed any institutional problem. If the hearing officer reached such a determination, it was not documented sufficiently to permit even limited review. Instead, the hearing officer appears to have denied this request on the mistaken belief that an officer who documents his observations in a conduct report and charges an inmate with an offense is categorically exempted from providing any further testimony in the disciplinary proceeding. The denial of Gonzales' request to call Officer Conde therefore denied him his right to present material and exculpatory witness testimony.

C.     **Denial of Requests to Call Other Officers Involved in Search**

In addition to Officer Conde, Gonzales asked to call as witnesses "the officer who conducted the shakedown, and any other officers who were also involved or was a witness to the shakedown." Dkt. 10-3 at 2; *see also* dkt. 10-2 at 1. These officers' testimony would be material and potentially exculpatory for the same reasons additional testimony from Officer Conde would be material and potentially exculpatory: They could reasonably be expected to provide additional information to answer critical questions about where the cellular phone was found and how it came to be associated with Gonzales.

The hearing officer denied these requests, asserting that Officer Conde was the only officer involved in the search. *See* dkt. 10-2 at 1. The respondent asserts the same in this habeas proceeding. Dkt. 10 at 13 ("Gonzales' request for Officer Conde and 'the officer who shook me down' were denied because Officer Conde's report was his statement of what happened and there was no other officer involved in the search.").

But this justification is contradicted by the evidence. The hearing officer noted in reviewing the surveillance video that at least one other person—Officer Conde's supervisor—participated in

the search. Dkt. 10-3 at 5 ("At approximately 1:19:33 Officer Conde hands his supervisor, while still in the bed area of offender Gonzales, a red Fila shoe box showing him what is inside of it."). And the Court observed at least six officers present during the search.

If such "broad unsupported findings" could justify prison officials' decisions to deny witnesses, "a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless." *Hayes*, 555 F.2d at 630. Indeed, the basis for denying Gonzales' request to call the other officers present for the search was not just broad and unsupported; it was flatly contradicted by other evidence the hearing officer considered in finding Gonzales guilty. The denial of this witness request deprived Gonzales of his right to present material, exculpatory witness testimony.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Because Gonzales was denied due process in ISR 18-11-0077, his petition for a writ of habeas corpus is **granted**. Gonzales' disciplinary conviction must be **vacated** and his sanctions **rescinded**. His earned credit time and credit-earning class must be **immediately restored**, and his new release date must be calculated accordingly.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 4/8/2020

_/s/ Tanya Walton Pratt_
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LUIS GONZALES
218651
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov